"Civil Action No. 2:99-cv-03678: Objections to Exit Plan and Agreement in Charlie and Nadine H."

Dear Honorable Stanley R. Chesler,

My name is Mona Spellman-Benjamin. I am happy to write on behalf of my children Ama Benjamin, Amour Benjamin, Amir Benjamin, Amani Benjamin, Arman Spellman and myself Mona Spellman-Benjamin. I am writing to request a reinstatement and extension for the Charlie and Nadine H Settlement which was recently under review for the Exit Plan and Agreement March 2023. I am writing to provide insight on the need for the Task Force legislation for include reunification and reversal for adoption initiated from 2006.

I am writing as I disagree with the Exit Plan for the class members who are still not remedied as a result of the actions of the New Jersey Child Welfare System of Care. I understand their was legislation created regarding "New Jersey Task Force on Child Abuse and Neglect.", however it does not address the issues with cases where fraud, waste, and abuse issue were not resolved, Racketeer Influenced and Corrupt Organizations (RICO) Act violations were not resolved, and anti-kickback law violations were not resolved within the New Jersey Child Welfare System of Care.

I am asking for continued federal oversight for concerns of forced foster adoption as a result of bad practices by the New Jersey Child Welfare System of Care. They have failed to utilize the programs allotted to the state in the "Keeping families Together" initiates in keeping with the legislative directives from legislative orders under C.9:6-8.75" New Jersey Task Force on Child Abuse and Neglect." Especially as it relates to the least restrictive measures for families as it relates to custody and care along with timely reunification for parents participating constructively in services.

My objection is out of the concern for myself and other children and families grossly affected through familial separation. I am asking cases of foster adoption within the New Jersey Child Welfare System of Care be reinvestigated for failure to use things such as the Family Preservation Act, Keeping Families Together and The Family First Service Act, as advertised on the DCF on the Air channel.

Thank You Kind Regards,

*Mona Spellman-Benjamin*

Mona Spellman-Benjamin

## CHAPTER 130

AN ACT concerning child welfare, amending P.L.1994, c.119, and supplementing Chapter 4C of Title 30.

BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey:*

1. Section 2 of P.L.1994, c.119 (C.9:6-8.75) is amended to read as follows:

C.9:6-8.75 "New Jersey Task Force on Child Abuse and Neglect."
2. There is established the "New Jersey Task Force on Child Abuse and Neglect." For the purpose of complying with the provisions of Article V, Section IV, paragraph 1 of the New Jersey Constitution, the New Jersey Task Force on Child Abuse and Neglect is allocated within the Department of Children and Families, but, notwithstanding this allocation, the task force shall be independent of any supervision or control by the department or by any officer or employee thereof.

   a. The purpose of the task force is to study and develop recommendations regarding the most effective means of improving the quality and scope of child protective and preventative services provided or supported by State government, including a review of the practices and policies utilized by the Division of Child Protection and Permanency and the Division of Family and Community Partnerships in the Department of Children and Families in order to:

(1) optimize coordination of child abuse-related services and investigations;
(2) promote the safety of children at risk of abuse or neglect;
(3) ensure a timely determination with regard to reports of alleged child abuse;
(4) educate the public about the problems of, and coordinate activities relating to, child abuse and neglect;
(5) develop a Statewide plan to prevent child abuse and neglect and mechanisms to facilitate child abuse and neglect prevention strategies in coordination with the Division of Family and Community Partnerships;
(6) mobilize citizens and community agencies in a proactive effort to prevent and treat child abuse and neglect; and
(7) foster cooperative working relationships between State and local agencies responsible for providing services to victims of child abuse and neglect and their families.

   b. The task force shall receive, evaluate, and approve applications of public and private agencies and organizations for grants from moneys annually appropriated from the "Children's Trust Fund" established pursuant to section 2 of P.L.1985, c.197 (C.54A:9-25.4). Any portion of the moneys actually appropriated which are remaining at the end of a fiscal year shall lapse to the "Children's Trust Fund."

Grants shall be awarded to public and private agencies for the purposes of planning and establishing or improving programs and services for the prevention of child abuse and neglect, including activities which:

(1) Provide Statewide educational and public informational seminars for the purpose of developing appropriate public awareness regarding the problems of child abuse and neglect;
(2) Encourage professional persons and groups to recognize and deal with problems of child abuse and neglect;
(3) Make information about the problems of child abuse and neglect available to the public and organizations and agencies which deal with problems of child abuse and neglect including by continuing to publish such information through a publicly accessible online portal; and
(4) Encourage the development of community prevention programs, including:
   (a) community-based educational programs on parenting, prenatal care, prenatal bonding, child development, basic child care, care of children with special needs, coping with family stress, personal safety and sexual abuse prevention training for children, and self-care training for latchkey children; and
   (b) community-based programs relating to crisis care, aid to parents, child abuse counseling, peer support groups for abusive or potentially abusive parents and their

children, lay health visitors, respite for crisis child care, and early identification of families where the potential for child abuse and neglect exists.

The task force shall, in awarding grants, establish such priorities respecting the programs or services to be funded and the amounts of funding to be provided as it deems appropriate, except that the task force shall place particular emphasis on community-based programs and services which are designed to develop and demonstrate strategies for the early identification, intervention, and assistance of families and children at risk in order to prevent child abuse and neglect.

The task force shall adopt such rules and regulations pursuant to the "Administrative Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.) to govern the awarding of grants pursuant to this subsection as may be necessary to establish adequate reporting requirements on the use of grant funds by recipient agencies and organizations and to permit the task force to evaluate the programs and services for which grants are awarded.

c. (1) The task force shall establish a Staffing and Oversight Review Subcommittee to review the performance and staffing levels of the Division of Child Protection and Permanency in order to develop recommendations regarding the department's performance, staffing levels, and the most effective methods of recruiting, hiring, and retaining staff within the division. The subcommittee shall also review, analyze, and make recommendations regarding the department's performance in:

(a) maintaining a case management information and data collection system that allows for the assessment, tracking, posting or web-based publishing, and utilization of key data indicators with consistent definitions and methodology, along with ensuring the accuracy of published data;

(b) implementing and sustaining a case practice model comprising a continuous set of activities that emphasizes quality investigation and assessment, which model shall include: performing safety and risk assessments; engaging with youth and families; working with family teams; providing individualized planning and relevant services; performing continuous review and adaptation; and ensuring safe and sustained transition from the department;

(c) guaranteeing that the operation of the department's State Central Registry ensures that allegations of child abuse and neglect are received by the department's field offices in a timely manner and investigations are commenced within the required response time identified by the State Central Registry;

(d) providing the most appropriate and least restrictive placements when out-of-home placement is necessary, and in so doing allowing: children to remain in their own communities, be placed with or maintain contact with siblings and relatives, and have their educational needs met; precluding children under age 13 from being placed in shelters; precluding children from being placed in out-of-State behavioral health facilities without written approval from the Assistant Commissioner for the Children's System of Care; and maintaining an adequate number and array of family-based placements to appropriately place children in family settings;

(e) providing comprehensive, culturally responsive services to address the identified needs of the children, youth, and families the department serves, including but not limited to: services for youth age 18 to 21; services for LGBTQI+ youth; mental health, and domestic violence services for birth parents whose families are involved with the child welfare system; preventive home visitation programs; trauma-informed care; and an adequate Statewide network of Family Success Centers;

(f) providing medical care to children and youth residing in resource family care, including: appropriate medical assessment and treatment, pre-placement, and entry medical assessments under Early and Periodic Screening, Diagnosis, and Treatment (EPSDT); guidelines, dental examinations; up-to-date immunizations; follow-up care and treatment and mental health assessment and treatment, where appropriate; behavioral health treatment provided in the least restrictive setting for children and youth; and evaluating the sufficiency of funding for these medical services;

(g) maintaining a comprehensive training program for child welfare staff and supervisors, including specialized training for investigators which training shall include pre-service training covering the case practice model and permanency planning, adoption

training, and training on case management systems, and mechanisms for staff completing training to demonstrate competency on required areas of training;

(h) making flexible funds available for use by caseworkers in crafting individualized service plans for children, youth, and families to: meet the needs of children and families; facilitate family preservation and reunification where appropriate; ensure that families are able to provide appropriate care for children; and avoid the disruption of otherwise stable and appropriate placements;

(i) adjusting support rates for resource family care, adoption assistance, and independent living to ensure alignment with the United States Department of Agriculture estimates for the cost of raising a child or adolescent in the urban Northeast, the U.S. Department Housing and Urban Development Fair Market Value for average rent in New Jersey, the Internal Revenue Service estimates for monthly food and household expenses, and other appropriate State and national benchmarks identified by the subcommittee;

(j) strengthening and sustaining appropriate permanency and adoption practices for the children and youth the department serves, recognizing that the department's permanency work begins at intake and encompasses the elements of the case practice model; and

(k) generally beginning the process of preparing a child for adoption and seeking and securing an adoptive placement as soon as the child's permanency goal becomes adoption, but in no case later than as required by federal law; conducting five-month and 10-month placement reviews for children in custody; commencing the adoption process as soon as a diligent search process has been completed and has failed to identify the location of both parents or a suitable family placement; and developing a child-specific recruitment plan for all children with a permanency goal of adoption needing the recruitment of an adoptive family, as well as evaluating the sufficiency of funding for such processes.

(2) No later than the first day of the 12th month next following the date of enactment of P.L.2022, c.130 (C.30:4C-3a et al.), and annually thereafter, the subcommittee shall review the department's performance in the areas identified in this paragraph (1) of subsection c. of this section, and shall issue a report with its findings and recommendations to the Governor and, pursuant to section 2 of P.L.1991, c.164 (C.52:14-19.1), to the Legislature.

(3) The Department of Children and Families shall annually allocate to the task force sufficient funding to permit the subcommittee to hire independent contracted staff or obtain other resources needed to carry out the responsibilities set forth in this paragraph.

(4) (a) The task force shall appoint at least 15 members to the subcommittee consisting of:

(i) the Assistant Commissioner of the Division of Child Protection and Permanency and the Commissioner of Children and Families, or their designees, who shall serve ex-officio; and

(ii) at least 13 public members, including: one representative of a State-based child advocacy organization; one attorney regularly engaged in the representation of parents in child protection matters; at least one attorney regularly engaged in the representation of the indigent; one attorney regularly engaged in the representation of children in out of home placement; one county human services director; one parent who has previously had involvement with the Division of Child Protection and Permanency; one alumni of the State's resource family care system; one resource family parent who is currently licensed by the State; and one representative of a State-based child abuse prevention focused organization.

(b) The members of the subcommittee shall serve for a term of three years or until the appointment of a successor, with the exception that the terms of the original membership of the subcommittee shall be constituted as to provide that seven of the public members shall serve for a term of one year, four of the public members shall serve for two years, and two of the public members shall serve for a term of three years.

(c) Members of the subcommittee shall be appointed and hold their initial organizational meeting within 45 days after the effective date of P.L.2022, c.130 (C.30:4C-3a et al.).

(d) The subcommittee shall designate a chairperson and vice chairperson from among its members, except that the commissioner's designee and the assistant commissioner of

the Division of Child Protection and Permanency shall not serve as the chairperson or vice chairperson of the subcommittee.

(e) The subcommittee shall be entitled to call to its assistance and avail itself of the services of employees of the department and seek the advice of experts as required and as may be available for the purposes of conducting the reviews required by this subsection.

(5) The Commissioner of Children and Families shall ensure the subcommittee is provided with information necessary for the subcommittee to fulfill its obligations under this subsection, including information obtained through the Division of Child Protection and Permanency's continuous quality review process, and the subcommittee shall be entitled to review such information as part of the subcommittee's examination of the department's performance and the development of recommendations.

(6) The task force may adopt rules and regulations pursuant to the "Administrative Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.) necessary to effectuate the purposes of this subsection.

C.30:4C-3a Child protection worker caseload, limits, exceptions, temporary.

2. a. The Commissioner of Children and Families shall ensure that no child protection worker is concurrently responsible for more than 15 cases at any time, unless the commissioner determines that assignment of cases in excess of this limit is temporarily necessary to ensure the life and safety of any child under the care and supervision of the Department of Children and Families.

b. If the average daily caseload of child protection workers exceeds 15 cases per worker for two consecutive months, the department shall be considered non-compliant with caseload standards established pursuant to this section. In such circumstances, the department shall:

(1) within 14 days of initial non-compliance under this subsection, deliver to the Governor, the Staffing and Oversight Review Subcommittee of the New Jersey Task Force on Child Abuse and Neglect established pursuant to subsection c. of section 2 of P.L.1994, c.119 (C.9:6-8.75), and, pursuant to section 2 of P.L.1991, c.164 (C.52:14-19.1), the Legislature, notice of the non-compliance and a summary of emergent efforts being made to rectify the non-compliance; and

(2) post, on a monthly basis, on the department's Internet website, the average daily Statewide caseload of child protection workers, until such time as the average daily caseload has been maintained at 15 or fewer cases per worker for 30 days.

c. As used in this section, "child protection worker" means an employee of the Division of Child Protection and Permanency or the Institutional Abuse Investigation Unit in the Department of Children and Families, or any other agency or successor agency conducting child abuse investigations pursuant to section 4 of P.L.1971, c.437 (C.9:6-8.11) or providing child protective services pursuant to P.L.1951, c.138 (C.30:4C-1 et seq.).

3. This act shall take effect immediately.

Approved December 20, 2022.

Request reinstatement and extension of the in Charlie and Nadine H Class Action Lawsuit

Now that you know the key terms of the Exit Plan and Agreement. what can you do next?

17. If you agree with the Exit Plan and Agreement, you do not have to do anything.

18. If you disagree with any part of the E x i t P l a n a n d Agreement and you want to tell the judge, you have to do these things:

• You must write a letter to the judge telling him what you do not like about the Exit Plan and Agreement. Include your name, address, phone number, and signature in the letter.

• On the first page of your letter write in large or underlined letters:

"Civil Action No. 2:99-cv-03678: Objections to Exit Plan and Agreement in Charlie and Nadine H."

• Mail your letter to:

The Honorable Stanley R. Chesler U.S. District Court for the District of New Jersey United States Courthouse and Post Office Building 6 2 Federal Square Newark, NJ 07101-0999

• You must also mail copies of your letter to the lawyers for the plaintiffs and defendants at the following addresses:

• If you need help writing your objections, you may ask someone to object on your behalf. The representative must state in the objection that he or she is your representative and explain the nature of the representation and the name of the class member.

• If you have a guardian or you are under the age of 18, your parent, guardian or court· appointed representative may object on your behalf. The guardian must state in the objection that he or she is your representative, the details of the appointment by the probate court or relationship to you (if parent) and explain the nature of the representation and the name of the class member.

19. You must do all of this to be sure that the judge will read your letter. Your letter must be received on or before April 10, 2023

April 1, 2024

Mona Spellman-Benjamin

3121 D 319 Fire Road

Egg Harbor Township, NJ 08234

470-242-1512 609=678-8931

monaspellman3144@gmail.com

Charlie and Nadine H. Settlement

Attention: Marcia Robinson Lowry

A Better Childhood, Inc.

355 Lexington Avenue, Floor 16

New York, NY 10017

Charlie and Nadine H. Settlement

Office of the Attorney General Division of Law

Attn: Christian A. Arnold

Assistant Attorney General

124 Halsey Street

Newark, NJ 07101

The Honorable Stanley R. Chesler

U.S. District Court for the District of New Jersey

United States Courthouse and Post

Office Building 6

2 Federal Square

Newark, NJ 07101-0999

Mona Spellman-Benjamin
3121 Osla Fire Rd
Egg Harbor Twp NJ
08234

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
2024 APR -4  P 2:59

The Honorable Stanley R. Chesler
U.S. District Court for the District of
New Jersey United States Courthouse & Post
Office Building &
2 Federal Square
Newark, NJ 07101-0999