Reinstatement of the Civil class action suit
Mona Spellman-Benjamin and children
Armani Spellman
Amani Benjamin
Amour Benjamin
Amir Benjamin    Ama Benjamin

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
2024 APR 30 A 10: 5

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHARLIE AND NADINE H., et al.,

Plaintiffs,

v.

MURPHY, et al.

Defendants.

Objections to Exit Plan and Agreement in Charlie & Nadine H."

Civil Action No. 2:99-cv-03678-SRC-CLW

## NOTICE TO CLASS MEMBERS OF PROPOSED SETTLEMENT AGREEMENT

**PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. A SETTLEMENT HAS BEEN PROPOSED IN THE *CHARLIE AND NADINE H.* CASE THAT MAY AFFECT THE RIGHTS OF CERTAIN NEW JERSEY RESIDENTS WHO WERE INVOLVED IN THE STATE'S CHILD WELFARE SYSTEM.**

### Why did you get this notice?

1. The purpose of this notice is to inform you about a proposed settlement in the *Charlie and Nadine H.* lawsuit. The settlement may affect the rights of certain people in New Jersey who were in foster care or known to New Jersey's child welfare system because of reported abuse or neglect. The settlement is not final. In order for the settlement to be final, the judge in this case, the Honorable Stanley R. Chesler, will hear from different people and decide if the settlement is fair, reasonable, and adequate. If this notice applies to you, you will have an opportunity to tell the judge what you think about the settlement before the judge decides whether to approve it.

   The rest of this notice explains the *Charlie and Nadine H.* lawsuit, how to determine whether this lawsuit applies to you, the key terms of the proposed settlement, and how you can give the judge your opinion about the proposed settlement.

### Does this notice apply to you?

2. This notice may apply to you if you are now or have ever been in foster care in the New Jersey or were known to the New Jersey's child welfare system because of reported abuse or neglect.

1

### What is this lawsuit about?

3. The *Charlie and Nadine H.* lawsuit was brought in 1999 by a group of people on behalf of a class of children who were in foster care or known to New Jersey's child welfare system because of reported abuse or neglect. The people who brought the lawsuit, called the "named plaintiffs," were Charlie and Nadine H., by their next friend Imogene Johnson; Jennifer and Patti W., by their next friend Yvonne Mitchell; Dennis M. and Denise R., by their next friend Karol Corbin Walker, Esq.; Marco and Juan C., by their next friend Dr. George Bigge; Ricardo O., by his next friend, Rosanne Maraziti, Esq.; Dolores and Anna G., by their next friend Susan Dargay, Esq.; Kyle J. by his next friend, the Reverend Doctor Warren Bouton; Ryan, Christopher Melissa H., by their next friend Geraldine Nurberger; Ricky, Daniel and Thomas M., by their next friend Christine Posluszny; and Barry M., by his next friend Rosita M. Randolph. They filed the lawsuit on their behalf and on behalf of all other persons like them ("plaintiffs").

4. The plaintiffs sued the New Jersey officials responsible for the operation of the child-welfare and foster-care systems in the State. The people who were sued are called "defendants." Today, the defendants are the Governor and the Department of Children and Families (DCF).

5. The judge who was assigned to this case decided that the named plaintiffs and their lawyers would fairly represent all similarly situated persons, making this case a "class action." Because this is a class action, the people to whom this notice applies are also called "class members."

6. From 2003 through the present, the parties agreed to various plans to support and govern the operation and performance of New Jersey's child welfare system, now led by DCF. The judge approved those agreements, which are called "Consent Decrees" and have the force of law.

7. An expert was approved by the Court to ensure that the defendants did what they agreed to do. This expert, the Center for the Study of Social Policy (CSSP) is called the Court Monitor, makes regular reports to the judge about the defendants' progress in meeting their obligations, and has worked with the defendants to achieve the goals in the Consent Decrees.

8. In November 2015, the judge approved the most recent agreement between the parties, known as the Sustainability and Exit Plan (SEP). Of the 48 Performance Measures set forth in the 2006 Modified Settlement Agreement, the SEP placed 12 in the "To be Maintained" section because the State demonstrated sustained performance.

9. The remaining Performance Measures were placed in the "To be Achieved" section, as the State continued to work towards compliance with all the Performance Measures. The SEP also outlined additional commitments the defendants were to make to exit from the lawsuit and federal court oversight.

10. The Court Monitor's report, dated March 22, 2022, noted that the defendants had continued to make progress, meeting 44 of the 48 Performance Measures.

11. Given the progress that the defendants made on meeting more of the Performance Measures and the challenges to meeting the remaining Performance Measures, the parties - aided by the Court Monitor - decided to discuss whether there was a way to resolve the remaining issues without more litigation.

12. The plaintiffs and the defendants have written down their agreement in a document called the "Exit Plan and Agreement." Although, on June 21, 2022, the judge preliminarily approved the agreement, the settlement is NOT FINAL. The settlement will be final only after the judge approves it after holding a public hearing called a "fairness hearing." Before the judge decides to approve it, you can tell the judge if you do not like any part of it and you can ask the judge to let you speak at the fairness hearing.

**What are the key terms in the Exit Plan and Agreement?**

13. The Exit Plan and Agreement requires the defendants to take certain actions during the remaining period of federal court oversight:

   - Defendants committed to implementing a new revised and comprehensive qualitative review system.

   - Defendants shall continue to monitor and report on the SEP measures via the Commissioner's Monthly Report, including annual updates on the Department's performance as measured by the revised and comprehensive qualitative review.

   - Defendants shall continue contracting with Rutgers University to produce the New Jersey Child Welfare Data Portal.

   - Defendants shall establish Staffing Oversight and Review Subcommittee (SORS) under the New Jersey Task Force on Child Abuse and Neglect as the entity responsible for reviewing DCF's performance. Defendants shall recommend and support modifications of the charter and responsibilities of SORS so that in addition to reviewing staffing levels of the Division of Child Protection and Permanency ("CP&P") and developing recommendations regarding staffing levels and the most effective methods of recruiting, hiring, and retaining staff within the CP&P, SORS shall review any and all information necessary to review DCF's performance and develop recommendations. Defendants shall furnish such information relevant to DCF's performance and functioning, including but not limited to data on the foundational elements set

3

forth in the SEP, all publicly available reports and dashboards, results from annual CFSR case reviews, the Annual Program and Services Report, and the results of the revised and comprehensive qualitative review.

- Defendants shall continue to provide CSSP access to the data and case records stored on New Jersey Statewide Protective Investigation, Reporting, and Information Tool ("NJ SPIRIT") until the conclusion of the Transition Period.

- Defendants committed to securing legislative support reinforcing DCF's obligation to codify certain elements of the SEP, including but not limited to caseload standards, and "provide the most appropriate and least restrictive placements, allowing children to remain in their own communities, be placed with or maintain contact with siblings and relatives, and have their educational needs met," *see* SEP Sec. II.D; and (2) to modify the mandates related to SORS to ensure it has oversight of DCF as it relates to DCF continuing to meet the Foundational Elements outlined in Sec. II of the SEP and performance metrics established by the State in consultation with CSSP and Plaintiffs. The legislation contemplated by the Exit Plan and Agreement was passed and signed into law on December 20, 2022. A copy of the legislation can be found at https://legiscan.com/NJ/text/A3707/id/2621377/New_Jersey-2022-A3707-Chaptered.html

Other Key Provisions

- CSSP will prepare a report on DCF meeting its obligations under the Exit Plan and Agreement during the Transition Period which will run for a six month period from the date of the fairness hearing.

- If the plaintiffs believe the defendants are not in compliance during the Transition Period, the Parties **will** engage in mediation with CSSP and a neutral third party.

- If the parties are unable to resolve compliance issues through mediation, Plaintiffs may raise their concerns to the Court which may result in further litigation.

- Unless an enforcement action is filed, the Exit Plan and Agreement **will** expire after SORS files its initial report.

- The judge will retain jurisdiction over the case to decide any disputes about compliance with the Exit Plan and Agreement.

- The Exit Plan and Agreement contains more detail about each of these commitments.

14. You may obtain a copy of the entire Exit Plan and Agreement on DCF's website at www.nj.gov/dcf/. The timelines in the Exit Plan and Agreement have been

4

changed by agreement among the parties and approved by the Court. The Transition Period will now run from April 25, 2023 until October 25, 2023. CSSP will issue a report by November 1, 2023, regarding DCF's compliance with the Exit Plan and Agreement during the Transition Period. SORS will now issue its initial report by December 31, 2023. Absent the filing of an enforcement action by plaintiffs, final exit from federal court oversight in this matter will occur upon the release of the SORS report.

15. Plaintiffs' lawyers believe that this Agreement is fair, reasonable, adequate, and is in the best interests of the class because it requires the defendants to continue to maintain the improvements made to the child-welfare and foster-care system and behavioral health system.

16. The lawyer for the plaintiff class is: Marcia Robinson Lowry, Executive Director of A Better Childhood. Class members do not pay any fees to this lawyer. If you have questions for the plaintiffs' lawyer, you can write to her at:

> *Charlie and Nadine H..* Settlement
> Attention: Marcia Robinson Lowry
> A Better Childhood, Inc.
> 355 Lexington Avenue, Floor 16
> New York, NY 10017

**Now that you know the key terms of the Exit Plan and Agreement, what can you do next?**

17. If you agree with the Exit Plan and Agreement, you do not have to do anything.

18. If you disagree with any part of the Exit Plan and Agreement and you want to tell the judge, you have to do these things:

> • You must write a letter to the judge telling him what you do not like about the Exit Plan and Agreement. Include your name, address, phone number, and signature in the letter.
>
> • On the first page of your letter write in large or underlined letters: "Civil Action No. 2:99-cv-03678: Objections to Exit Plan and Agreement in *Charlie and Nadine H.*"
>
> • Mail your letter to:
> The Honorable Stanley R. Chesler
> U.S. District Court for the District of New Jersey
> United States Courthouse and Post
> Office Building

5

2 Federal Square
Newark, NJ 07101-0999

- You must also mail copies of your letter to the lawyers for the plaintiffs and defendants at the following addresses:

*Charlie and Nadine H.* Settlement
Attn: Marcia Robinson Lowry, Esq.
A Better Childhood, Inc.
355 Lexington Avenue
Floor 16
New York, NY 10017
mlowry@abetterchildhood.org

*Charlie and Nadine H.* Settlement
Office of the Attorney General
Division of Law
Attn: Christian A. Arnold
Assistant Attorney General
124 Halsey Street

- If you need help writing your objections, you may ask someone to object on your behalf. The representative must state in the objection that he or she is your representative and explain the nature of the representation and the name of the class member.

- If you have a guardian or you are under the age of 18, your parent, guardian or court- appointed representative may object on your behalf. The guardian must state in the objection that he or she is your representative, the details of the appointment by the probate court or relationship to you (if parent) and explain the nature of the representation and the name of the class member.

19. You must do all of this to be sure that the judge will read your letter. Your letter must be received on or before **April 10, 2023.**

20. DO NOT CALL THE COURT. THE COURT WILL NOT ACCEPT PHONE CALLS ABOUT THIS. YOU MUST SUBMIT YOUR OBJECTIONS IN WRITING.

### When and where will the judge decide whether to approve the Exit Plan and Agreement?

21. A final fairness hearing will be held on April 25, 2023 at 10:00 a.m., unless it has been postponed for reasons relating to an earlier dispute, before the Honorable Stanley R. Chesler of the U.S. District Court for the District of New Jersey, at the Senator Frank R. Lautenberg Building. Please check with the Court to confirm the date of the hearing. The courthouse is located at 2 Federal Square, Newark, New Jersey, 07101-0999.

22. At the final fairness hearing, the judge will consider whether the settlement is fair, reasonable, and adequate. The judge will consider any objections that were made according to the procedures described above. Plaintiffs' and defendants'

6

lawyers will be available to answer any questions that the judge may have.

23. You may speak at the hearing only if you sent your objections to the judge in writing.

24. If you would like to speak at the hearing, you must also request in writing the judge's permission to speak. To do this, send a letter to the judge and send copies to the lawyers for plaintiffs and defendants with the following on the first page in large or underlined letters: "Civil Action No. 2:99-cv-03678: *Charlie and Nadine H.:* Notice of Intention to Appear at Final Fairness Hearing." Include your name, address, phone number, and signature in the letter.

25. If the judge decides to approve the settlement, his decision is final and the lawsuit will end, except that the Court will still be available to enforce the provisions of the Exit Plan and Agreement until SORS issues its initial report. The defendants will undertake the commitments in the Exit Plan and Agreement and class members will no longer be able to petition the courts for the same thing that they sued about in the *Charlie and Nadine H.* lawsuit.

26. If the judge does not approve the settlement, the SEP and Exit Plan and Agreement will continue in effect.

July 30, 2023

Mona Spellman-Benjamin
3121 D #319 Fire Rd
Egg Harbor Township, NJ 08234
609-678-8931 470-242-1512
monaspellman3144@gmail.com

Re: New Jersey Senate Bill 2656 Expose Police Misconduct Make Law Enforcement Records Available for Release Under The State Open Public Record

Dear Representatives and Legislative Leaders:

My name is Mona Spellman-Benjamin I am a single divorced African American mother from Hammonton, New Jersey. I am writing in support of New Jersey Senate Bill 2656 as a result of my own personal story and experience with New Jersey Police and East Camden Child Protective Services. I have previously written in support of the African American Family Preservation Act and The Family First Prevention Services Act.

I am now writing in support of the New Jersey Senate Bill 2656 to help expose police misconduct and make law enforcement records available for release under the state open public record as a result of deliberate misuse of the system. The Senate Bill supports ideas mentioned here:

"Senate Bill 2656, sponsored by Senator Loretta Weinberg, D-Bergen, would make law enforcement records available for release under the state Open Public Record, including:

- ☐ Complaints, allegations, and charges filed against police officers
- ☐ Transcripts and exhibits from disciplinary trials and hearings
- ☐ Dispositions of proceedings
- ☐ Final written opinion/memo on disposition and discipline imposed, including the agency's complete factual findings and analysis of the officer's conduct
- ☐ Internal affairs records

- ☐ Agency factual findings, analysis, and final opinions on disciplinary hearings
- ☐ Video recordings of incidents that gave rise to complaints, allegations, charges, or internal affairs investigations."

The Senate Bill supports ideas of equality and fairness supported by Supreme Court Justice Chief Justice Stuart Rabner in the published article Court Ruling On Police Records A Win For Transparency, AdvocatesSay found online at:

https://newjerseymonitor.com/2022/03/14/court-ruling-on-police-records-a-win-for-transparency-advocates-say/.

The article supports the bill and promotes the idea of helping defendants who face issues with police misconduct and the need for transparency in handling cases were the officers' egregiousness resulted in damages or life altering circumstances for example a lied report used in court.

The best way to sum up the importance and ideas of the importance is a quote from Chief Justice Stuart Rabner.

> "Public access helps deter instances of misconduct and also helps ensure an appropriate response when misconduct occurs. In the long run, access to reports of police misconduct like the one sought here promotes public trust."
> – New Jersey Supreme Court Chief Justice Stuart Rabner

The concern is the officer's knowledge base and the intentional misuse and tying everyday working parents into the legal system punitively. The bill would support efforts such as these mentioned in the article:

> *"In New Jersey, police misconduct records — such as excessive force, lying, and falsifying reports — are largely kept secret. Without this information, the public cannot identify officers who violated the rules and hold them accountable for their actions."*
> *https://innocenceproject.org/*

My zealousness for supporting the Senate Bill 2656 is the result of having my child taken away unjustly due to bad procedural processes of Police and East Camden Child Protective Services and concerns of coverup. My position is the bill helps to undo any injustices as a result of bad practices within the system. Having a CPS case support by

lies compromises the justice and integrity of the courts and should not be taken lightly. In the words of the late Dr. Martin Luther King Jr. :

*"Injustice anywhere is a threat to justice everywhere. We are caught in an inescapable network of mutuality, tied in a single garment of destiny. Whatever affects one directly, affects all indirectly."*

*— Martin Luther King Jr., Letter from the Birmingham Jail*

The idea of american democracy is built on ideas such as these. In 2023 it is a true regression to have law enforcement support ideas of inequality when our forefathers established these principles to promote equality and justice for everyone not just for the rich or well off. I am happy to be able to apply these laws in my fight for justice where my constitutional and civil rights were violated, in particular the 4th and 14th amendments as a result of bullying and misconduct by law enforcement.

Thank You Kind Regards,


Mona Spellman-Benjamin

# FAMILY THERAPY AND CONSULTATION SERVICES / UNITED FAMILY SERVICES
## THERAPIST TREATMENT PLAN

**Name:** Mona Spellman     **Dates of Plan: (up to two months)** 9/6/23-11/6/23

| | |
|---|---|
| **Client Strengths** Mona expresses that her strengths are that she is open with others, she is outgoing at times and speaks her mind. Mona identifie herself to be an involved parent now and has grown tremendously as a person and parent. She is interested in how her children and family are and motivates them to grow. She has a good support system which include her family and her friends | |
| **Problem Statement (in client's own words)** "That encounter with the police got me into this situation in 2019. Armin and I were in the car and I felt that this was my turning point in life. I felt violated by a person in power and their power was misused. I keep seeing this through my life." | |
| **Primary Diagnosis from DSM 5** F43 | **Secondary Diagnosis from DSM 5** F43.1 |

| Goals: Behaviors youth and family wish to change. | Objective(s) Client and/or family member(s) actions measured by frequency, duration & amount. Place a check by objectives that are criteria for discharge or reduction of services. | Intervention(s) Therapist actions measured by frequency, duration and amount. | Target Date: | Date Achieved and Outcome |
|---|---|---|---|---|
| Improve communcation with family members and children | Discuss various communication skills. | Various modalities will be utilized on a weekly basis | 11/26/23 | |
| Process trauma with Mona & her son, Armin | Improve relationship with son. | Various modalities will be utilized on a weekly basis | 11/26/23 | |
| | | | | |

**Referrals made for additional services and/or linkages to resources:** None reported

I have participated in creating this plan and will do my best to accomplish these goals.

| Signature of Client | Date | Signature of Parent/Guardian(s) | Date |
|---|---|---|---|
| *Silvia Rainho* | 9/26/23 | | |
| **Signature of Therapist** | **Date** | **Signature of Clinical Supervisor** | **Date** |

February 17, 2024

Mona Spellman-Benjamin
3121 D 319 Fire Road
Egg Harbor Township, NJ 08234
470-242-1512


Hi,

My name is Mona Spellman-Benjamin. I am a single divorced African American mother from Southern New Jersey. I am writing to gain support in the reinstatement of the Charlie and Nadine H. v Corzine class action lawsuit for families affected by the negligence of the New Jersey Child Protective Service which ended March 2023.

I am concerned there is still a need for monitoring of the courts and the New Jersey Child Protective Services for the use of fabricated information to steal custody of children and violating the civil rights of African American mothers and children. The concern is the negligence is far reaching as it has caused family disruption, family separation, and family bonding issues for parents and children.

The New Jersey Child Protective Service (CPS) offices along with the New Jersey (ARC) Adoption Resource Center has negligently stolen and sold African American Children through failure of the courts and CPS system. The number one contributing issue is fabrication; using lies in court followed by lack of services being resourcefully used for parents and children.

These actions have been noticed as forms of discrimination against African American Families through providing unfair and unequal services both in the court system and in the CPS system. Please see the attached statements from the New Jersey Division of Children and Families. Please see the recommendation for Ending Forced Foster Adoption here in the United States.

I am asking a separate and dedicated Bill be introduced through the Assembly and Senate as the Assembly Women Dunns Bill only addresses the issue of timely services being provided for children and mothers which is part of the issue with failure to provide the proper services leading to forced family separation through the office of CPS.


Thank You Kind Regards,



Mona Spellman-Benjamin

Mona Spellman-Benjamin
3121 D319 Fire Rd
Egg Harbor Twp NJ
08034

Civil Action No. 2:99-cv-03678:
Objections to Exit Plan and Agreement
in "Charlie & Nadine H."
Honorable Stanley R Chesler
U.S. District Court for the District of
New Jersey
United States Courthouse and Post
Office Building
2 Federal Square
Newark NJ 07101-0999